UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
TRANE TECHNOLOGIES,  :
                    Plaintiff,  :
                                                      **ORDER AND OPINION**
       -against-  :  **GRANTING PLAINTIFF'S**
                                                      **MOTION FOR SUMMARY**
                                                        **JUDGMENT AND DENYING**
HUSSMAN CORPORATION,  :  **DEFENDANT'S MOTION FOR**
                    Defendant.  :  **SUMMARY JUDGMENT**
:  21 Civ. 6262 (AKH)
------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        The instant dispute arises out of a stock purchase agreement (the "SPA") between Plaintiff Trane Technologies' ("Plaintiff") predecessor-in-interest and Defendant Hussman Corporation ("Defendant"). The transaction included the sale of a manufacturing plant (the "Plant") and equipment in the Plant. Three years after the closing of the SPA, an employee at the Plant was fatally injured while working on a piece of equipment that was included in the sale. The employee's wife and daughter brought a tort suit against nine defendants, including Plaintiff, for damages (the "Underlying Lawsuit").

        Plaintiff brings suit against Defendant, seeking indemnification for its costs in defending the Underlying Lawsuit, pursuant to an indemnification provision in the SPA. Under the Indemnification by Buyer clause, Defendant agreed to indemnify Plaintiff for Losses arising out of or relating to: (i) any breach of any representations or warranties of Plaintiff; (ii) any failure of Plaintiff to perform any covenant or other agreement, contained in the SPA; (iii) the operations and liabilities of the Sold companies and/or the Business before or after the Closing; and (iv) any Proceeding brought by an unaffiliated third party arising after the date hereof but only to the extent arising out of or related to the operation of the Business. Claims related to a

1

breach of representation or warranty, covenant or agreement, however, are subject to an 18-month survival date, excepting "Environmental Claims," which survived indefinitely.

    The Parties cross-move for summary judgment (ECF Nos. 17, 18), with Plaintiff arguing that it is entitled to indemnification under both subsections (iii) and (iv), and Defendant arguing that Plaintiff's claim is subject to the 18-month survival period, and therefore, time-barred because the employee's injury and Plaintiff's claim for indemnification arose well beyond the 18-month survival date. *See* Memorandum of Law ("Pl. Mot."), ECF No. 19; Memorandum of Law ("Def. Mot."), ECF 21. The sole issue for resolution is whether third-party tort claims fall within Section 9.3(a)(iii) or (iv), or are subject to Section 9.1's survival date and thus time-barred. I agree with Plaintiff. The losses associated with defending the Underlying Lawsuit arise out of the operations of the business, and the suit constitutes a Proceeding relating to the operation of the business. For this reason, and others provided below, Plaintiff's motion is granted, and Defendant's, denied.

## BACKGROUND

    The undisputed facts are as follows. Defendant is a manufacturer of commercial and industrial refrigeration equipment and displays, with a manufacturing plant in Bridgeton, Missouri. Statement of Undisputed Material Facts ("SUMF") ¶ 4, ECF No. 26.[1] Plaintiff is the corporate successor to Ingersoll-Rand Company ("IR") and Ingersoll-Rand Industrial Refrigeration Company (the "IR Entities"). ¶ 2. On August 6, 2011, Ingersoll-Rand PLC ("IR PLC"), the parent corporation of IR, entered into a stock purchase agreement with Defendant, whereby IR PLC divested itself of majority ownership and transferred to Defendant, ownership of the Bridgeton Plant, along with all the equipment in the Plant. ¶¶ 5–6. Included in the equipment was a blanking shear that Defendant originally acquired in January 1992, but

---

[1] Unless otherwise noted, paragraph symbols ("¶") refer to paragraphs in the Parties' Joint Statement of Undisputed Facts, ECF No. 26.

subsequently sold to the IR Entities in 2000. ¶¶ 9–10, 18. Thus, the SPA transferred ownership back to Defendant. ¶ 10. The Closing Date for the transaction was September 30, 2011. ¶ 8.

As relevant here, the SPA contained the following provisions and definitions, applicable to Defendant's indemnification obligations:

> Section 9.3  Indemnification by [Defendant]; Investor: "From and after the Closing, [Defendant] agrees to indemnify, defend, hold harmless, pay and reimburse each of the [Plaintiff] Sellers . . . for and in respect of any and all Losses that they may incur whether or not involving a Third Party Claim arising out of or relating to: (i) any breach of any representations or warranties of [Defendant] set forth in Article IV, (ii) any failure of [Defendant] Buyer to perform any covenant or other agreement of [Defendant], as applicable, contained in this Agreement, (iii) the operations and liabilities of the Sold Companies and/or the Business before or after the Closing, . . . and/or (iv) any Proceeding brought by an unaffiliated third party arising after the date hereof but only to the extent arising out of or related to the operation of the Business . . . ." SPA at 96, ECF No. 27-5. Proceeding is defined as any "suit, action or legal, governmental, administration, arbitration or regulatory proceeding." Section 3.9, SPA at 31.
>
> Section 9.5  Termination of Indemnification: "The obligations to indemnify and hold harmless a party hereto in respect of a breach of representation or warranty, covenant or agreement shall terminate on the applicable survival termination date (as set forth in Section 9.1)." SPA at 96.
>
> Section 9.1  Survival: All representations and warranties contained in this Agreement shall survive the Closing and shall terminate on the eighteen (18) month anniversary of the Closing Date, except: (a) representations and warranties [relating to] Employee Benefits and . . . Tax Matters shall survive the Closing and terminate thirty (30) days after the expiration of the applicable statute of limitations, (b) representations [relating to] Environmental Matter shall survive . . . and terminate on the three (3) year anniversary of the closing date, and (c) representations and warranties" relating to stock, brokers fees, and other organizational matters. . . . Any right to assert [an Environmental Claim] shall survive indefinitely. SPA at 94.

The SPA also contained a provision articulating Plaintiff's obligation to indemnify Defendant:

> Section 9.2  Indemnification by the [Plaintiff]: "From and after the Closing, the [Plaintiff] Sellers, agree, jointly and severally, to indemnify, defend, hold harmless, pay and reimburse [Defendant] Buyer . . . for and in respect of any and all Losses that they may incur whether or not involving a Third Party Claim arising out of or relating to: (i) any breach of any representations or warranties of [Plaintiff] Sellers set forth in Article III (other than any breach of a representation or warranty [relating to Tax Matters]; (ii) any failure of the [Plaintiff] Sellers to perform any covenant or other agreement of the

3

[Plaintiff] Sellers contained in this Agreement; . . . (v) any Environmental Claim by a Person other than [Defendant] . . . regarding any condition at or resulting from a Former Facility; (vi) any Proceeding (other than with respect to any Environmental Claim . . . ) . . . but solely to the extent related to[] the Non-Sold Business; . . . (viii) the inside tempered glass failure resulting from the heater breaking contact with the E-Cap tape to 115 volt low temperature Innovator Doors manufactured between June 25, 2010 and November 5, 2010 at IR's Monterrey, Mexico manufacturing facility . . . ." SPA at 94–95.

On September 6, 2014, one of Defendant's employees sustained fatal injuries while working on the blanking shear at the Bridgeton Plant. ¶ 12. In addition to filing for, and receiving, a workers' compensation award against Defendant, the employee's wife and minor daughter brought a tort suit against nine defendants (including Plaintiff's predecessors-in-interest, the IR Entities), alleging strict liability for product defect; strict liability for failure to warn; negligence; and wrongful death under aggravating circumstances. ¶¶ 13, 19. The Complaint alleged that the IR Entities and others provided and/or installed mechanical, electrical, and pneumatic component parts, including valves, clamps, sensors lights, locks, and gates, and/or safety design, as well as providing operating inspection, repair, and maintenance procedures, instructions and/or warning for" the blanking shear. ¶ 16.

The IR Entities were served on December 30, 2015, and on January 21, 2016, IR sent a letter to Defendant seeking defense and immunity under Section 9.3 of the SPA. ¶¶ 14, 20. Defendant rejected the request on February 9, 2016. Plaintiff subsequently tendered similar requests on April 19, 2019, June 2, 2021, and Defendant denied them on June 17, 2021. ¶¶ 23, 25, 26.

Plaintiff has defended the Underlying Lawsuit since service on December 30, 2015, and to date has incurred $378,375.07 in expenses. ¶¶ 29–30. On July 23, 2021, Plaintiff brought this suit to enforce its right to indemnification under Section 9.3.[2] ¶ 32. During the

---

[2] The Complaint also included claims for specific performance and breach of contract, based upon Defendant's continued use of Plaintiff intellectual property (an "IR placard" left on the blanking shear) in violation of Section 5.12 of the SPA. *See* ECF No. 27-1 at 15.

4

course of the Parties' limited discovery, Defendant responded to Plaintiff's requests for admission and admitted that the Underlying Lawsuit was not a representation, warranty, covenant, or agreement within the meaning of SPA and at the time the parties negotiated the terms. *See* Plaintiff's First Set of Requests for Admission ¶¶ 11–16, ECF No. 24-13.

The Parties now cross-move for summary judgment on the issue of liability and whether Plaintiff's Losses in defending the third-party tort claims fall within Section 9.3(a)(iii) or (iv), or are subject to Section 9.1's survival date and thus time-barred.

## DISCUSSION

### I. Legal Standard

To succeed on a motion for summary judgment, the moving party must show that "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" of "material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the" nonmoving party. *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (citations omitted). However, "[m]ere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Associates v. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

### II. Analysis

"Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000); *see also RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) ("Where a contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument,

5

and not from extrinsic evidence.") (internal quotation marks omitted). I hold that Plaintiff is entitled to indemnification under Section 9.3(iii) and (iv) and not subject to the 18-month termination which applies only to claims under Section 9.1(i) and (ii).

Plaintiff is entitled to indemnification under Section 9.3(iii) because the Underlying Lawsuit arose out of the operation of the business. The employee was fatally injured while working at the Plant and on a machine that Defendant acquired under the SPA.

Plaintiff also is entitled to indemnification under Section 9.3(iv). The Underlying Lawsuit—a "legal" "suit" or "action"—is a Proceeding, as defined in the SPA; it was brought by an unaffiliated third party; and, it arose out of the "operation of the business."

Contrary to Defendant's suggestion, Plaintiff's claims are not time-barred. The 18-month limitation period in Section 9.5 applies only to breaches of representations, warranties, covenants, and agreements—contractual obligations. And Defendant admits that the Underlying Lawsuit is none of those things.

Defendant nevertheless argues that adopting Plaintiff's reading would be contrary to the parties' intent because it would allow tort claims—which are nowhere mentioned—to survive indefinitely. Such claims would not survive indefinitely because the applicable statute of limitations (three years) would limit survival. Defendant also points to the exception for Environmental Claims, which it concedes survive indefinitely, and argues that under *expressio unius est exclusion alterius*, the exclusion of Environmental Claims for "indefinite" survival must be construed as disallowing indefinite survival for any other claims.

Defendant's arguments are unavailing. The exception for Environmental Claims is irrelevant, and the silence as to tort claims, meaningless. The sweeping language in Sections 9.3(iii) and (iv) would have obviated any need to make any specific provisions for tort claims like those raised in the Underlying Lawsuit because they obviously fall within losses arising out of or relating to liabilities and operations of the business. I can intuit no intent of the parties to

6

limit Defendant's obligations under either provision. This is especially so, given that Section 9.3(iii) applies to losses *before or after* the Closing. If Defendant (or the parties) intended to limit Defendant's liability arising out of business operations, they could not have picked a worse way to achieve that end.

Further, Section 9.2—governing Plaintiff's indemnification obligations—makes clear that the parties knew how to be specific when they so desired, including to make exceptions for discrete operational liabilities. Section 9.2(viii), for example, is painstakingly specific. It requires Plaintiff to indemnify Defendant for losses arising out of or relating to "the inside tempered glass failure resulting from the heater breaking contact with the E-Cap tape to 115 volt low temperature Innovator Doors manufactured between June 25, 2010 and November 5, 2010 at IR's Monterrey, Mexico manufacturing facility[.]"

Section 9.2 shows that the parties knew how to be specific and allocate liability when desired. Sections 9.3(iii) and (iv) are bereft of specificity or limitations on liability. There is no indication that the parties intended to limit Defendant's liability relating to the operation of the acquired business. That the parties knew how to be specific and impose limitations in other provisions, but failed to do so in Sections 9.3(iii) and (iv), is strong evidence that the omission was intentional. *See Kaplan v. Cott Beverage Corp.*, 27 Misc. 2d 655, 656–57 (Sup. Ct. N.Y. Co. 1961) ("[T]he real intent of the parties may be shown by their conduct.").

Under the plain meaning of Section 9.3(iii) and (iv), Plaintiff is entitled to indemnification for its costs in defending the Underlying Lawsuit. Accordingly, Plaintiff's motion for summary judgment is granted, and Defendant's motion is denied.

## CONCLUSION

For the reasons discussed, Plaintiff is entitled to indemnification because its Losses arise out of or relate to the operations and liabilities of the business, and the Underlying Lawsuit also arises out of a Proceeding related to the operation of the business. Plaintiff's

motion for summary judgment is granted, and Defendant's motion is denied. The Clerk of the Court shall terminate the motions (ECF Nos. 17, 18) and grant judgment to Plaintiff, dismissing the complaint with costs.

SO ORDERED.

Dated:　　March __, 2022
　　　　　New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge